IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Michael John Sarno,<br> Petitioner, | )<br>)<br>) |
| v. | )    1:17cv953 (LO/JFA) |
| | ) |
| E. Wilson, Warden,<br> Respondent. | )<br>) |

## MEMORANDUM OPINION

Petitioner, Michael John Sarno, a federal inmate proceeding pro se, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241, challenging the assessment of restitution payments as part of the execution of his sentence. Petitioner has submitted the required filing fee, pursuant to 28 U.S.C. § 1914(a). Now before the Court are respondent's Motion to Dismiss or in the Alternative for Summary Judgment and petitioner's Motion for Summary Judgment. For the following reasons, respondent's Motion to Dismiss or in the Alternative for Summary Judgment Motion for Summary Judgment will be construed as a Motion for Summary Judgment, which will be granted and petitioner's Motion for Summary Judgment will be denied.

### I.

Sarno is confined to the Federal Correction Complex in Petersburg, Virginia pursuant to his conviction by a jury of conspiracy to commit racketeering and corrupt organizations under 18 U.S.C. §1962(d) and conducting an illegal gambling business under 18 U.S.C. §1955. Dkt. No. 5 at 1. Sarno received a 240 month sentence on the racketeering count as well as a 60 month sentence on the illegal gambling business count and was ordered to pay a special assessment of $200 and restitution of $1,784,077. Id. His judgment and sentencing order provides, in relevant part:

> Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:
> A  X  Lump sum payment of $ 200.00 due immediately, balance due not later than _____ , or in accordance  C,  D,  E, or F  below; or
> B      Payment to begin immediately (may be combined with C, D, or F below); or . . .
> E      Payment during the term of supervised release will commence within ____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or
> F  X  Special instructions regarding the payment of criminal monetary penalties: Defendant shall make monthly payments of a minimum of ten percent of his net monthly income as directed by the Probation Office.
> Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

Dkt. No. 4-1, Attachment 2 at ¶ 20.

On October 23, 2015, Sarno entered into an "Inmate Financial Plan" agreement with BOP, pursuant to which he agreed to pay $50 per quarter, beginning in December 2015, toward the satisfaction of his court-ordered obligations. Dkt. No. 4-1, Attachment 3. The agreement provided, in relevant part:

> A staff member has provided me with information regarding the potential consequences of a refusal on my part to participate in the Inmate Financial Responsibility Program.
>
> I agree to submit payments toward satisfaction of the financial obligation(s) indicated on this form in accordance with the payment plan outlined below. I agree to follow this payment plan until the financial obligation(s) is satisfied. . . .
>
> Payment Method . . . : Amt/Pct:  $ 50$^{00}$  Freq: Qu . . . .

Id.

Sarno complied with the terms of the October 2015 "Inmate Financial Plan," but he was placed on "refusal status" after he refused to sign a proposed revised Inmate Financial Plan dated

2

October 18, 2016, which would have required him to pay $445 per month. Id. On November 17, 2016 Sarno filed a Request for Administrative Remedy on two grounds: (i) because the Bureau of Prisons has no authority to collect the restitution ordered in the judgment and sentencing order, payments are not due immediately, Pet. at 7; and (ii) even if payment is due during incarceration, BOP had no authority to collect anything from Sarno because collection authority was delegated to the Probation Office, Id. at 8. Sarno's request was denied by the Warden, and the subsequent appeals were denied by the BOP Regional Office and Central Office, respectively. Dkt. No. 5 at 4.

In August 2017, Sarno filed the instant petition raising the grounds previously raised in his administrative appeals and asserting a third ground for relief that he concedes was "not raised [in all administrative appeals] because BOP regulations only permit one argument per administrative remedy and even if it could have been raised BOP limits the available space." Pet. at 8–9. As relief, Sarno requests that this Court "[v]acate BOP's refusal status order for [the Inmate Financial Responsibility Program ('IFRP')] and enjoin BOP from future placement on FRP status/collection." Id. at 9.

## II.

A district judge may properly treat a motion to dismiss as a motion for summary judgment under Federal Rule of Civil Procedure 12, if "on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court."[1] Fed. R. Civ. P. 12(d). Because respondent attached several documents to his motion, including a signed declaration and portions of petitioner's judgment order, his motion will be construed as one for

---

[1] Because Sarno filed a motion for summary judgment, the Court assumes that he has presented "all the material that is pertinent to the motion," as is required under Rule 12(b) before a court converts a motion to dismiss to one for summary judgment.

3

summary judgment.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To do so, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. Analysis

"[A]n inmate's challenge to the BOP's administration of the [Inmate Financial Responsibility Program ("IFRP")] is a challenge to the 'execution' of a sentence that is cognizable under 28 U.S.C. § 2241." Fontanez v. O'Brien, 807 F.3d 84, 87 (4th Cir. 2015). The IFRP is a BOP program that enables prisoners to make payments toward court-ordered financial obligations by using their inmate accounts. Id. at 85. The financial obligations a prisoner may have include the following: (1) special assessments imposed pursuant to 18 U.S.C. § 3013; (2) court-ordered restitution; (3) fines and court costs; (4) state or other local court obligations; and (5) other federal government obligations. 28 C.F.R. § 545.11. Because the IFRP is a voluntary program, BOP cannot compel an inmate to make payments. Id.

Under the IFRP, BOP staff assists inmates in developing a financial plan to satisfy their financial obligations. 28 C.F.R. §§ 545.10–545.11. Once an inmate executes an IFRP contract and voluntarily agrees to make the minimum payments, BOP officials from the inmate's unit team meet with the inmate to establish a payment plan. 28 C.F.R. § 545.11. Thereafter, the unit team holds regularly scheduled program reviews during which it determines whether the inmate has made sufficient progress toward fulfilling his or her outstanding financial obligations. 28 C.F.R. § 545.10. In satisfying his or her financial obligations, an inmate may make payments from institution resources or non-institution resources, and the balance in an inmate's trust account is considered by BOP staff during the development of an inmate's financial plan. 28 C.F.R. § 545.10. Based on the staff's findings, an inmate may be asked to use funds from prison employment or contributions from outside sources. See 28 C.F.R. §§ 542.10, 542.11; see also BOP Program Statement 5380.08, at 7-8.

5

An inmate's refusal to participate in the IFRP or failure to comply with the agreed upon financial payment plan subjects an inmate to certain adverse consequences. See 28 C.F.R. § 545.11(d) (enumerating the adverse consequences, which include, but are not limited to, being placed in the lowest housing classification, not receiving furlough, being subject to a commissary spending limitation). Placement on "refuse status" following a BOP determination that IFRP payments are not being made according to the contract is one such consequence. BOP Program Statement 5380.08, at 14-15; see also Williams v. Farrior, 334 F. Supp. 2d 896, 900-01 (2004) (observing that "refuse status" is the phrase used to refer to an inmate participating in the IFRP who refuses to comply with the financial plan). To be removed from "refuse" status, an inmate must resume compliance with the IFRP. BOP Program Statement 5380.08, at 15; Williams, 334 F. Supp.2d at 901.

### i. Petitioner's Grounds I and II; BOP's Authority to Collect Restitution

Petitioner asserts that BOP has "no authority to collect restitution as the restitution in the Judgment and Commitment is not due immediately." Pet. at 7. Specifically, petitioner contends that the judgment and commitment Order "does not indicate that payment is due immediately, [b]ut that [he] shall make monthly payments of not less than ten percent of [his] net Monthly Income as directed by the Probation Office [upon release]." Id. at 8.

He further contends that "even if payment is due during [his] incarceration, the District Court improperly delegated the authority to schedule the payment amount and payment schedule to the Probation Office." Id. Thus, "BOP has no authority" to collect funds from him while he is incarcerated. Id. Specifically, petitioner asserts that even though the judgment and commitment Order states, "unless the [sentencing] court has expressly ordered otherwise, . . . payment of criminal monetary penalties is due during imprisonment," the probation office, not the

sentencing court, has the sole authority over his financial obligations, and the probation office has not granted BOP authority to collect any funds. Id. In support of his position, Sarno points to the absence of "a finite dollar amount for each payment" in the judgment and the absence of any reference to the BOP in the "special instructions, Section F."[2] Dkt. No. 8 at 2.

Respondent asserts that the collection of restitution payments by BOP pursuant to an IFRP agreement is consistent with the criminal judgment order. Dkt. No. 5 at 10. In respondent's view, the restitution payment is due immediately, and the use of the IFRP to collect unpaid restitution that is due immediately is not an improper delegation of the sentencing court's authority to establish a repayment schedule. Id. Respondent asserts that because "the sentencing court has determined the amount and timing of restitution," petitioner's participation in the IFRP cannot be "deemed an unlawful delegation of the responsibility of the sentencing court to establish a payment schedule." Id. In addition, respondent asserts that "if the sentencing court sets a payment schedule, it is not an improper delegation to the BOP if the BOP sets a different schedule under the IFRP in that participation in the IFRP is voluntary." Id.

Sentencing courts have discretion to set the amount of fines and restitution payments an individual must make following his or her conviction or a crime. A sentencing court may not delegate to the BOP the requirement under the Mandatory Victims Restitution Act ("MVRA"),

---

[2] In his opposition to respondent's motion, petitioner asserts, for the first time, that any delegation of authority to determine the amount of payments to the probation office "contravenes Article III of the United States Constitution as the District Court has lost the final authority to set the payment amount and schedule." Dkt. No. 10 at 3. He also contends for the first time in his opposition that respondent's decision to place him on IFRP refuse status "is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law within the meaning of the Administrative Procedure Act ('APA')." Dkt. No. 10 at 8. These newly raised claims are not discussed here because it is well accepted that a plaintiff, even one proceeding pro se, cannot amend his complaint by asserting new claims in an opposition brief to a motion for summary judgment. Butts v. Ofogh, 2:09cv140 (E.D. Va. Mar. 1, 2010) (citing Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cit. 1996) (holding that a complaint cannot be amended by a brief in opposition to a motion for summary judgment)).

7

which was in effect at the time of petitioner's sentence, to establish a repayment schedule for fines and restitution. United States v. Miller, 77 F.3d 71, 77-78 (4th Cir. 1996). Nevertheless, a judgment of conviction need not contain a specific schedule of restitution payments to be made during the period of incarceration to be valid. See United States v. Dawkins, 202 F.3d 711, 716 (4th Cir. 2000). Monetary penalties assessed in a judgment under the MVRA are due immediately, unless the sentencing court provides otherwise. 18 U.S.C. § 3572(d).

The judgment in Sarno's criminal case expressly provides that a "[l]ump sum payment of $200.00" is "due immediately" and the special instructions provide that Sarno "shall make monthly payments of a minimum of ten percent of his net monthly income as directed by the Probation Office." Dkt. No. 4-1, Attachment 3. The judgment also provides that "[u]nless the [sentencing] court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court." Id.

The sentencing court did not delegate "final authority" over the amount and timing of Sarno's restitution payments to the either the probation office or the BOP. Miller, 77 F.3d at 77. Indeed, the sentencing court set the amount of restitution due, $1,784,077.00, and the judgment, when considered as a whole, indicates that the sentencing court intended for Sarno to begin his restitution payment immediately. Specifically, the sentencing court provided that payment was "due during imprisonment," unless it "expressly ordered otherwise." Clearly, nothing in the order constitutes an express statement that payment is not due during incarceration, and the judgment's language that "[a]ll criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the

8

clerk of the court," contemplates Sarno's participation in a payment program during his incarceration. This interpretation is consistent with 18 U.S.C. § 3572(d)(1), which requires restitution payments to be made "immediately" unless "in the interest of justice, the court provides for payment on a date certain or in installments." Hickman v. Keffer, 498 F. App'x 375, 378–79 (5th Cir. 2012). "Immediate" payment orders, like the one in this case, have been construed to authorize BOP to place inmates in the IFRP program as a means of facilitating payment, notwithstanding that their judgments also provided for post-imprisonment installment payments. See, e.g., Matheny v. Morrison, 307 F.3d 709, 711–12 (8th Cir. 2002) (holding that "BOP has the discretion to place an inmate in the IFRP when the sentencing court has ordered immediate payment of the court-imposed fine"); Carter v. Federal Medical Center, 2017 WL 3704566 at *4 (D. Mass. 2017) (explaining that a judgment that had Box D--for installment payments—marked, did not make inconsistent the language in Box F and Box F's language that "payment is due during incarceration"); McGhee v. Clark, 166 F.3d 884, 886 (7th Cir.1999).

Despite Sarno's assertions to the contrary, his case is distinguishable from Miller and United States v. Johnson. In Miller, the sentencing court's judgment provided wide latitude to the Bureau of Prisons and the Probation Office, ordering the restitution payments be made "at such times and in such amounts as the Bureau of Prisons and/or the Probation Office may direct." Miller, 77 F.3d at 74. Similarly, in Johnson the sentencing court "delegate[d] to a probation officer the authority to determine, within a range [from $6,000.00 to $35,069.10], the amount of restitution or the amount of installment payments of a restitution order." United States v. Johnson, 48 F.3d 806, 808 (4th Cir. 1995). In contrast, the Court finds that Sarno's judgment provided for payment of restitution immediately, and that any outstanding balance due at the time of his release shall be paid in "monthly payments of a minimum of ten percent of his

net monthly income as directed by the Probation Office." Dkt. No. 4-1, Attachment 3. See Hickman v. Keffer, 498 Fed. Appx. 375, 378–79 (5th Cir. 2012) (interpreting language similar to the language used in paragraph F of the judgment in petitioner's case to mean that payment was due immediately).

For those reasons, the Court finds that the sentencing judge set the amount and timing of restitution payments, and Sarno has not established that his participation in the IFRP is a violation of Miller or Johnson, or an improper delegation of authority by the sentencing judge to the BOP under 18 U.S.C. § 3572(d).

### ii. Ground Three, Restitution Payments Limited to "Net Monthly Income"

Sarno alleges that even if this Court finds that "payment is due immediately and the BOP has authority to collect, the [judgment and commitment order] limits payment to his 'net monthly income' and does not include funds he already has in his possession." Pet. at 8. Therefore, he contends, "BOP can not take or consider funds which [he] previously owned [or possessed]," but may only consider his "income." Pet. at 8. According to petitioner, funds already in his possession are not considered income, and if BOP is authorized to collect any funds at all, it "is only authorized to attach a minimum of ten percent of Sarno's 'Net Monthly Income'; which is currently $5.25/month," and a maximum of his total prison income. Id. He asserts that he "has no investments nor any other income as defined by Blacks [sic] law." Pet. at 8.

Petitioner reveals that he did not raise ground three in all appeals available to him because "BOP regulations only permit one argument per administrative remedy and even if it could have been raised, BOP limits the available space," but the argument was "briefly addressed in his Regional Appeal BP10." Pet. at 9.

Respondent argues that because petitioner acknowledges that he did not exhaust his

10

administrative remedies for ground three before he filed this petition, that ground should be dismissed without prejudice. Dkt. No. 5 at 13. Respondent further asserts that even if petitioner had exhausted ground three, "BOP may properly include money received by the inmate from other sources when calculating IFRP payments." Id.

It is well settled that a petitioner must exhaust all available administrative remedies before commencing a § 2241 action. Crosson v. South Carolina, 16 F.3d 409 (4th Cir. 1994). Because federal habeas review "is the avenue of last resort," in the absence of exceptional circumstances demonstrating the need for the remedy afforded by a writ of habeas corpus, courts require the exhaustion of alternative remedies before a prisoner may seek federal habeas relief. Timms v. Johns, 627 F.3d 525, 530–31 (4th Cir. 2010). When a petitioner has failed to exhaust administrative remedies, his or her petition, or any unexhausted portion, should be dismissed without prejudice. Bataldo-Castillo v. Bragg, 678 Fed. Appx. 166 (4th Cir. 2017) (per curiam). Petitioner admits that he has failed to exhaust his administrative remedies for this asserted ground for relief; his stated reason for doing so is "BOP regulations only permit one argument per administrative remedy and even if it could have been raised, BOP limits the available space," and he has failed to proffer any exceptional circumstances that would excuse his failure to exhaust. Therefore, petitioner's third ground for relief is unexhausted and is not cognizable in this action.[3]

---

[3] Even if petitioner had exhausted his claims, he would fare no better. Section 542.10, 545.11(b) of 28 C.F.R provides that "[p]ayments may be made from institution resources or non-institution (community) resources." This language has been interpreted to mean that BOP may "consider funds received from sources other than prison work in determining whether an inmate is able to participate in the IFRP." See Pierson v. Morris, 282 Fed. Appx. 347, 348 (5th Cir. 2008); see also Wadley v. Zych, 2012 WL 1533285, at *2 (W.D. Va. Apr. 30, 2012) ("Neither § 545.11 nor Program Statement 5380.08 exclude gifts from family or friends from the category of "non-institution (community) resources."). Therefore, BOP is not limited to considering a prisoner's prison income in determining the proper IFRP payment amount.

## III. Conclusion

For the foregoing reasons, Respondent's Motion to Dismiss or in the Alternative Motion for Summary Judgment, Dkt. No. 4, will be granted, and Plaintiff's Motion for Summary Judgment, Dkt. No. 7, will be denied. An appropriate Order and Judgment shall issue.

Entered this 27th day of July 2018.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge